United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9  ANDRE CARPIAUX,                              No. C 06-3493 CW

10        Plaintiff,
                                               ORDER GRANTING
11     v.                                      DEFENDANTS' MOTION
                                               FOR SUMMARY JUDGMENT
12  CITY OF EMERYVILLE, <u>et al.</u>,

13        Defendants.
   _____/

14

15

16     Plaintiff asserts several claims against Defendants, all

17  agents of the City of Emeryville (the City), in connection with an

18  allegedly unlawful search of his property on July 23, 2004.

19  Defendants move for summary judgment on all of Plaintiff's claims.

20  Although Plaintiff was informed by order of the Court that he must

21  file an opposition to Defendants' motion by November 8, 2007, he

22  has not filed an opposition.[1]  The matter was taken under

23  submission on the papers.  Having considered the record and the

24  papers submitted by Defendants, the Court grants their motion.

25

26  _____

27     [1]On November 21, 2007, Plaintiff filed a notice of his intent
   to file an opposition.  In this notice, Plaintiff stated that he
   anticipated filing his opposition by November 26, 2007.
28  Nonetheless, no opposition has been filed to date.

1          BACKGROUND[2]

2          Plaintiff has resided in his home, located at 1264 Ocean

3     Avenue in Emeryville, California, since 1968.  He is interested in

4     engineering, and uses his house and yard as a workspace.  Over the

5     years, he has worked on projects relating to, among other things,

6     high-depth submarines, automobile transmissions and solar-powered

7     cars.

8          Since at least 1984, the condition and use of Plaintiff's

9     property have been a matter of concern to the City.  In 1987 or

10    1988, the City seized a laboratory Plaintiff had constructed within

11    a forty-foot aluminum container placed in his yard.  Similarly, in

12    1993, the City seized the equipment and materials Plaintiff had

13    been using to build his submarine.

14         On numerous occasions since 1994, the Emeryville City Council

15    has passed resolutions declaring Plaintiff's property a public

16    nuisance and ordering Plaintiff to abate various violations of the

17    City's code.  These violations have included, among other things:

18    dismantled and inoperative vehicles and automobile parts on the

19    property; an accumulation of dirt, litter and debris in vestibules,

20    doorways, and adjoining sidewalks; a mass of lumber, junk, trash,

21    debris and salvage materials visible from the street; abandoned or

22    inoperable heavy machinery; hazardous pools, ponds and excavations;

23    an accumulation of garbage and refuse creating a harborage for

24    rodents; failure to contract garbage service; exposed wiring and

25

26         [2]The facts recited in this section are taken from the amended
      complaint, Plaintiff's deposition and documentary evidence
27    submitted by Defendants.

28                                    2

inadequate electrical fixtures; and use of an unvented stove as a heat supply.  Plaintiff believes the City Council's actions represent unjustifiable interfere with his enjoyment of his property.  He also believes that, in passing the resolutions, the City Counsel was harassing him in order to advance its agenda of gentrification.

On July 19, 2004, the City applied to the Alameda County Superior Court for a warrant permitting its agents to inspect Plaintiff's property for violations of the municipal code and City Council resolutions.  The application was accompanied by the declarations of Victor Gonzales, the City's chief building official, and Defendant Nancy Templeton, the City's community preservation officer.  The declarations stated that, based on the signatories' personal knowledge, numerous code violations could be witnessed from the public right-of-way.

The court found that good cause existed to believe that Plaintiff had violated the municipal code and the City Council's resolutions, and issued a warrant.  The warrant ordered appropriate officials to "enter, investigate, and search the Property for the purpose of identifying violations of Housing, Fire, Plumbing, Electric, Building, Health & Safety, and Emeryville Municipal Codes and applicable City Council Resolutions."  Larsen Dec. Ex. R.  It permitted forced entry and inspection of Plaintiff's yard and the interior of his residence, from boundary to boundary, even in his absence.

On July 21, 2004, Defendant Michael Guina, a deputy city attorney, sent Plaintiff a copy of the inspection warrant along

United States District Court
For the Northern District of California

with a notice that City staff would conduct an inspection of his property on July 23, 2004 at 11:00 a.m.  These documents were also taped on the gate to Plaintiff's property, where Plaintiff acknowledges he saw them prior to the search.

On July 23, 2004 at approximately 11:00 a.m., a group of City officials including Mr. Gonzales and Defendants Templeton, Guina and Neal arrived at Plaintiff's property to execute the warrant. Plaintiff met the group at the gate and objected to the search, claiming that he had not received proper notice.  According to Plaintiff, Defendant Guina hesitated to execute the warrant over Plaintiff's objections, but Defendant Neal, a police captain for the City, said, "It's good enough for me, let's go." Id. Ex. A at 64.

Captain Neal opened the gate and the group entered Plaintiff's yard.  Plaintiff attempted to accompany them during the search, but Captain Neal took him by the neck, locked his arm, and said, "You stay here." Id. at 66.  Captain Neal restrained Plaintiff in this position for "at least a couple minutes" but less than five minutes, then released him. Id. at 67, 70.  Plaintiff then accompanied the rest of the group as they inspected his property. Plaintiff testified that he did not experience any pain during or after the incident with Captain Neal, that he did not say anything to Captain Neal as he was being restrained, and that Captain Neal's hold did not leave any marks on his body. Id. at 68-69.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the

4

evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an
> essential element of the nonmoving party's case, or,
> after suitable discovery, the moving party may show that
> the nonmoving party does not have enough evidence of an
> essential element of its claim or defense to carry its
> ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with

5

evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u>
<u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v.</u>
<u>NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
moving party shows an absence of evidence to support the non-moving
party's case, the burden then shifts to the non-moving party to
produce "specific evidence, through affidavits or admissible
discovery material, to show that the dispute exists."  <u>Bhan</u>, 929
F.2d at 1409.

  If the moving party discharges its burden by negating an
essential element of the non-moving party's claim or defense, it
must produce affirmative evidence of such negation.  <u>Nissan</u>, 210
F.3d at 1105.  If the moving party produces such evidence, the
burden then shifts to the non-moving party to produce specific
evidence to show that a dispute of material fact exists.  <u>Id.</u>

  Where the moving party bears the burden of proof on an issue
at trial, it must, in order to discharge its burden of showing that
no genuine issue of material fact remains, make a <u>prima facie</u>
showing in support of its position on that issue.  <u>UA Local 343 v.</u>
<u>Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994).  That
is, the moving party must present evidence that, if uncontroverted
at trial, would entitle it to prevail on that issue.  <u>Id.</u>; <u>see also</u>
<u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th
Cir. 1991).  Once it has done so, the non-moving party must set
forth specific facts controverting the moving party's <u>prima facie</u>
case.  <u>UA Local 343</u>, 48 F.3d at 1471.  The non-moving party's
"burden of contradicting [the moving party's] evidence is not
negligible."  <u>Id.</u>  This standard does not change merely because

United States District Court
For the Northern District of California

1   resolution of the relevant issue is "highly fact specific."   Id.

2                                DISCUSSION

3   I.   Section 1983 Claims

4        Section 1983 "provides a cause of action for the 'deprivation

5   of any rights, privileges, or immunities secured by the

6   Constitution and laws' of the United States."   Wilder v. Virginia

7   Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

8   Section 1983 is not itself a source of substantive rights, but

9   merely provides a method for vindicating federal rights elsewhere

10  conferred.   See Graham v. Connor, 490 U.S. 386, 393-94 (1989).   To

11  state a claim under § 1983, a plaintiff must allege two essential

12  elements: (1) that a right secured by the Constitution or laws of

13  the United States was violated; and (2) that the alleged violation

14  was committed by a person acting under color of state law.   West v.

15  Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d

16  1243, 1245 (9th Cir. 1987).

17       Municipalities cannot be held vicariously liable under § 1983

18  for the actions of their employees.   Monell v. Dep't of Soc. Servs.

19  of N.Y., 436 U.S. 658 (1978).   "Instead, it is when execution of a

20  government's policy or custom, whether made by its lawmakers or by

21  those whose edicts or acts may fairly be said to represent official

22  policy, inflicts the injury that the government as an entity is

23  responsible under § 1983."   Id. at 694.   More specifically,

24  municipalities may be held liable for inadequate police training

25  "only where failure to train amounts to deliberate indifference to

26  the rights of persons with whom the police come into contact," and

27  "the identified deficiency in a city's training program [is]

28                                   7

closely related to the ultimate injury." City of Canton v. Harris, 489 U.S. 378, 388, 391 (1989).

A.   Claims against Captain Neal

Plaintiff's first cause of action charges Captain Neal with acting under color of law to deprive him of the right to be free from unreasonable searches and seizures, the right not to be deprived of life or liberty without due process of law, the right to be free from the use of excessive force by police officers, the right to equal protection of the laws and the right to be free from interference within the zone of privacy.[3]

1.   Unreasonable search and seizure

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV; Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995). Because the inspection of Plaintiff's home was conducted pursuant to a warrant, his claim must fail if the warrant was validly issued. See Steagald v. United States, 451 U.S. 204, 211-12 (1981) ("[T]he entry into a home to conduct a search or make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant.") To satisfy the requirements of the Fourth Amendment, a warrant must issue on probable cause, be supported by a sworn declaration, and describe with particularity the place to be searched. U.S. Const. amend. IV.

The warrant at issue here satisfies all of these requirements.

---

[3]Originally, Plaintiff also charged Defendants Guina, Templeton and James with liability for violating these constitutional provisions, but the Court dismissed these claims on an earlier motion.

United States District Court
For the Northern District of California

It was supported by the declarations of Mr. Gonzales and Ms. Templeton, who described specific violations of the municipal code that could be seen from the public right-of-way.  These statements provided probable cause for the warrant.  See United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2005) (the "totality of the circumstances" must provide a "fair probability" of a legal violation).  In addition, the warrant meets the Fourth Amendment's particularity requirement; it describes the area subject to inspection as the property located at 1264 Ocean Avenue, "from boundary to boundary," including "the interior of the main residence, any detached buildings, and all exterior yards."  Larsen Dec. Ex. R.; see Steele v. United States, 267 U.S. 498, 503 (1925) ("It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.").

Because the search of Plaintiff's property was supported by a validly executed warrant,[4] his rights under the Fourth Amendment were not violated.

2.    Excessive use of force

Under the Fourth Amendment, any force used during the execution of a search warrant must be objectively reasonable under the circumstances.  Boyd v. Benton County, 374 F.3d 773, 778 (9th Cir. 2004).  Evaluating the reasonableness of the force "requires a careful balancing of the nature and quality of the intrusion on the

_____

[4]The Court notes also that the warrant meets the requirements, including the notice requirement, applicable to inspection warrants under California law.  See Cal. Civ. Proc. Code § 1822.50 et seq.

9

individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Graham</u>, 490 U.S. at 396 (internal quotation marks omitted).  "Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." <u>Chew v. Gates</u>, 27 F.3d 1432, 1440-41 (9th Cir. 1994).  However, "on summary judgment, the court may make a determination as to reasonableness where, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the defendant's] use of force was reasonable." <u>Hopkins v. Andaya</u>, 958 F.2d 881, 885 (9th Cir. 1992).

In conducting the inspection, Defendants sought to further a valid governmental interest, namely, abating a public nuisance and putting an end to Plaintiff's violations of the municipal code. Captain Neal's restraint on Plaintiff's physical liberty was done to prevent Plaintiff from interfering with the inspection, and only after Plaintiff had tried to stop the inspectors from entering his property.  In addition, Plaintiff's description of the incident indicates that Captain Neal used a minimal amount of force to restrain him; he took hold of Plaintiff's neck and arm to prevent him from following the inspection team.  By Plaintiff's own account, Captain Neal caused him no pain or injury, nor did Plaintiff complain to Captain Neal of pain during the incident. Additionally, Captain Neal released Plaintiff after a short amount of time, at which point he was permitted to witness the inspection and ensure that his personal items were not unduly disturbed. Under the circumstances, the <u>de minimis</u> use of force Captain Neal

employed to restrain Plaintiff was reasonable from his perspective at the time, and thus cannot serve as the basis for a Fourth Amendment claim.  See Hupp v. City of Walnut Creek, 389 F. Supp. 2d 1229, 1232-33 (N.D. Cal. 2005) (while excessively tight handcuffing can constitute a Fourth Amendment violation, where there was no physical manifestation of injury or contemporaneous complaint about tight handcuffs, no claim could lie); Gonzalez v. Pierce County, 2005 WL 2088367, at *9 (W.D. Wash.) (no Fourth Amendment claim where there was no injury or "more than de minimis discomfort"); Graham, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

    3.    Equal protection, due process and privacy claims

    Because Plaintiff does not claim that he was discriminated against on the basis of his membership in a protected class, he can succeed on his equal protection claim only by demonstrating that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).  "Disparate government treatment will survive rational basis scrutiny 'as long as it bears a rational relation to a legitimate state interest.'"  Id. (quoting Patel v. Penman, 103 F.3d 868, 875 (9th Cir. 1996)).

    Plaintiff has come forward with no evidence demonstrating that he has been treated differently from other individuals who have

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   violated the City's municipal code and have refused to comply with

2   orders to correct such violations.  Thus, he has no basis for an

3   equal protection claim.  To the extent Plaintiff bases his claim on

4   being treated differently from individuals who do not use their

5   property as a workshop in the way that he does, his claim must also

6   fail.  The City has a legitimate interest in enforcing its laws and

7   in abating public nuisances.  Plaintiff has not shown that the

8   actions taken in response to the condition in which he maintains

9   his property lack a rational relation to these interests.

10      As for Plaintiff's due process and privacy claims, it is not

11  clear to what set of facts these claims apply.  The Court

12  interprets them as relating either to the alleged use of an invalid

13  warrant to inspect Plaintiff's premises or to Captain Neal's use of

14  force when executing the warrant.  However, these events are best

15  analyzed as claims brought under the Fourth Amendment.  As

16  discussed above, Plaintiff cannot succeed on his Fourth Amendment

17  claims.

18      4.   Qualified immunity

19      Defendants argue that Captain Neal is entitled to qualified

20  immunity on the claims asserted against him.  This defense protects

21  government officials "from liability for civil damages insofar as

22  their conduct does not violate clearly established statutory or

23  constitutional rights of which a reasonable person would have

24  known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The rule

25  of qualified immunity protects "all but the plainly incompetent or

26  those who knowingly violate the law."  Saucier v. Katz, 533 U.S.

27  194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341

28                                  12

(1986)).  A defendant may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation.  Id.  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a defendant is entitled to qualified immunity, the court must engage in the following inquiries.  At the outset, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right.  Conn v. Gabbert, 526 U.S. 286, 290 (1999).  In other words, the court must ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Saucier, 533 U.S. at 201.  If this inquiry yields a positive answer, then the court proceeds to determine if the right was "clearly established."  Id.

The inquiry as to whether the right at issue was clearly established must be made in light of the specific context of the case, not as a broad general proposition.  Saucier, 533 U.S. at 202.  "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  As the Supreme Court has explained, "[O]fficials can still be on notice

13

United States District Court
For the Northern District of California

that their conduct violates established law even in novel factual circumstances." Id. at 753.  The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct.  Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his or her conduct was lawful in the situation confronted.  Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).  If the law did not put the officer on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  Saucier, 533 U.S. at 202. Therefore, qualified immunity shields an officer from suit when he or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he or she confronted.  Id. at 206.  The defendant bears the burden of establishing that his or her actions were reasonable, even though he or she violated the plaintiff's constitutional rights.  Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

The Court has already found that Captain Neal did not violate Plaintiff's constitutional rights.  But even if he had, he is entitled to qualified immunity because: 1) Plaintiff has not shown that the rights he claims were violated were "clearly established" under the law; and 2) Defendants have produced sufficient evidence to show that Captain Neal could have reasonably believed that his

1  actions were lawful under the circumstances at the time.

2       As discussed above, the inspection of Plaintiff's property was

3  done pursuant to a validly issued warrant.  It was reasonable for

4  Captain Neal and other members of the inspection team to execute

5  the warrant, which demonstrated no facial defect, over Plaintiff's

6  objections.  Given Plaintiff's attempts to prevent the inspection

7  team from executing the warrant, it was also reasonable for Captain

8  Neal to believe that momentarily restraining Plaintiff in a way

9  that did not cause him any pain, thereby enabling the team to go

10 about its work without interference, would not be unlawful.  None

11 of Captain Neal's actions were contrary to law, let alone clearly

12 established law at the time of Defendants' search.  Accordingly,

13 Captain Neal is entitled to summary judgment on Plaintiff's

14 constitutional claims on the alternative ground of qualified

15 immunity.

16 B.   Claims against the City

17      Plaintiff's second cause of action charges the City and its

18 Police Department with liability for the alleged civil rights

19 violations caused by the individual Defendants.  Specifically, he

20 argues that, under Monell, "Neal and other police officers were

21 inadequately trained and instructed as to proper and lawful

22 practice in the stopping, detention, and arrest of individuals,

23 which led directly to Plaintiff's mishandling."  Am. Compl. at 14.

24      In the first instance, the Court has ruled that Plaintiff's

25 constitutional rights were not violated by the search of his

26 property, and thus there can be no basis for the City's liability.

27 Moreover, Plaintiff has failed to come forward with any evidence

28
                                 15

**United States District Court**
For the Northern District of California

1  that the City's training of its police is inadequate in a way that

2  amounts to deliberate indifference of the rights of its residents.

3  Therefore, <u>Monell</u>'s requirements have not been satisfied and

4  Plaintiff's second cause of action is dismissed.

5  II.  Tort Claims

6  A.   Intentional infliction of emotional distress

7       Plaintiff asserts a claim of intentional infliction of

8  emotional distress (IIED) against Defendants based on their

9  behavior during the inspection of his property and on what he

10 characterizes as a long campaign against him and his way of life.

11 The elements of a cause of action for IIED are: (1) extreme and

12 outrageous conduct; (2) intended to cause or done in reckless

13 disregard for causing; (3) severe emotional distress; and

14 (4) actual and proximate causation.  <u>See</u> <u>Cervantez v. J.C. Penney</u>

15 <u>Co., Inc.</u>, 24 Cal. 3d 579, 593 (1979).  The conduct must be so

16 extreme as to "exceed all bounds of that usually tolerated in a

17 civilized community," <u>id.</u>, and the distress so severe "that no

18 reasonable [person] in a civilized society should be expected to

19 endure it."  <u>Fletcher v. Western Nat'l Life Ins. Co.</u>, 10 Cal. App.

20 3d 376, 397 (1970).

21      Plaintiff has not demonstrated outrageous conduct beyond all

22 bounds of what is accepted in a civilized society.  While he argues

23 that Defendants "acted in such a manner as to intentionally

24 denigrate and smear [his] reputation, to wrongfully shame and

25 embarrass him, and to cause him to feel shock and fear," Am. Compl.

26 at 16, the evidence demonstrates that Defendants were simply

27 attempting to get Plaintiff to comply with the municipal code and

28                                    16

United States District Court
For the Northern District of California

1    stop maintaining his property as a public nuisance.   No reasonable

2    juror could conclude from the evidence in the record that

3    Defendants' aim was to humiliate and denigrate Plaintiff, let alone

4    that they used outrageous tactics to do so.   Accordingly,

5    Plaintiff's claim for intentional infliction of emotional distress

6    must be dismissed.

7    B.    Trespass

8         Plaintiff claims that Defendants trespassed onto his property

9    when they conducted their inspection.   The cause of action for

10   trespass is an unauthorized entry onto the land of another.   Church

11   of Christ in Hollywood v. Superior Court, 99 Cal. App. 4th 1244,

12   1252 (2002).   However, "[a] public employee is not liable for an

13   injury arising out of his entry upon any property where such entry

14   is expressly or impliedly authorized by law."   Cal. Gov't Code

15   § 821.8.   Because, as discussed above, Defendants' inspection was

16   made pursuant to a validly executed warrant, it was authorized by

17   law.   Thus, Plaintiff's trespass claim is dismissed.

18                              CONCLUSION

19        For the foregoing reasons, Defendants' motion for summary

20   judgment is GRANTED and the complaint is dismissed in its entirety.

21   The clerk shall enter judgment for Defendants and close the file.

22   Each party shall bear its own costs.

23        IT IS SO ORDERED.

24

25   Dated: 12/13/07

                              _____
26                            CLAUDIA WILKEN
                              United States District Judge

27

28                              17

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ANDRE CARPIAUX,

                Plaintiff,

  v.

CITY OF EMERYVILLE et al,

                Defendant.
_____/

Case Number: CV06-03493 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 13, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Andre  Carpiaux
1264 Ocean Avenue
Emeryville,  CA 94608

Dale L. Allen
Dirk Donald Larsen
Joshua Mark Bryan
Low, Ball & Lynch
505 Montgomery Street, 7th Flr
San Francisco,  CA 94111

Dated: December 13, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk

18